```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

HOWARD G. CLAIR, RALPH S. WEAVER,   )
and CAROL S. PINTEK, individually  )
and on behalf of all others         )
similarly situated,                 )
                                    )
           Plaintiffs,              )
                                    )
     v.                             )   Civil Action No. 03-288
                                    )
ANTHONY J. DeLUCA, HARRY J. SOOSE,  )   CLASS ACTION
FRANCIS J. HARVEY, JAMES C.         )
McGILL, RICHARD W. POGUE,           )
DANIEL A. D'ANIELLO, PHILIP B.      )
DOLAN, E. MARTIN GIBSON, ROBERT F.  )
PUGLIESE, JAMES DAVID WATKINS, and  )
THE CARLYLE GROUP,                  )
                                    )
           Defendants               )

**MEMORANDUM**

Pending before the Court is a renewed motion by Albert and Barbara Glover ("the Glover Plaintiffs" or "the Glovers"), seeking to become Lead Plaintiff in this securities fraud class action. (Docket No. 36, "Renewed Motion.") The Renewed Motion is filed in response to an Order of Court issued on November 10, 2005, directing the Glovers to rectify certain shortcomings identified by the Court with regard to their suitability as lead plaintiffs. We also address herein the appointment of counsel for this action, a matter which we declined to address in our previous opinion concerning the initial motion by the Glover Plaintiffs. For the reasons discussed below, the Renewed Motion is granted in part and denied in part. The Glover Plaintiffs'

1

choice of counsel as proposed in Docket No. 26 is granted in part and denied in part.

Because we assume familiarity with the prior opinion on this subject (see Memorandum dated November 10, 2005, Docket No. 34, "11/10/05 Memo"), we will not revisit in detail the conclusions discussed therein.

## I. Suitability of Albert and Barbara Glover to Act as Lead Plaintiffs

In our prior opinion on this subject, we concluded that we were unable to determine if Albert and Barbara Glover satisfied the criteria established by the Private Securities Litigation Reform Act of 1995 (the "Reform Act") to act as Lead Plaintiff in this matter. Specifically, we questioned whether they satisfied the requirement that the "most adequate plaintiff" in a securities fraud class action be "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).[1] In analyzing the

---

[1] The statute establishes a rebuttable presumption that the most adequate plaintiff (1) "either filed the complaint or made a motion in response to a notice;" (2) has "the largest financial interest" in the relief sought by the class as determined by the court; and (3) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). We found that the Glover Plaintiffs satisfied the first criterion inasmuch as they had filed a motion for lead plaintiff status in response to each of the two notices of the pending litigation and that they met the requirements of the "typicality prong" of Rule 23(a)(3) because their claims appeared to "arise from the same course of events" and they could be expected to offer the same legal arguments as the class members they sought to represent.

Glover Plaintiffs' suitability under the "adequacy prong" of Rule 23(a)(4) of the Federal Rules of Civil Procedure, we concluded that we were unable to make a final determination on that question because little or no information had been provided about the existence of common interests between the Glovers and the putative class, nor was there any expression of willingness on their part to vigorously prosecute the action. (11/10/05 Memo at 16-20.) We particularly questioned their ability to understand and control the litigation, make decisions regarding settlement, and identify, retain, and monitor competent counsel for the class.

The Glover Plaintiffs responded to our concerns by providing an affidavit of Albert Glover (Declaration of Albert L. Glover in Support of Glover Plaintiffs' Renewed Motion. . . , Docket No. 38, "Glover Aff.") which provides much of the information missing from the previous motion for lead plaintiff status. Before turning to the analysis of Mr. Glover's qualifications, however, we must consider the proposal that Barbara Glover act as Co-Lead Plaintiff. Mrs. Glover is conspicuous by the absence of any information about her in the Renewed Motion. She provides no affidavit, is not mentioned in the brief in support of the motion, and merits only a few passing references in her husband's affidavit. Most tellingly, Mr. Glover's affidavit states that he manages investments for wife, who "relies on me to do so because

of my professional and educational financial background." (Glover Aff., ¶ 9.) This is the third opportunity the Glover Plaintiffs have had to establish Mrs. Glover's credentials to serve as Lead Plaintiff in this litigation, but they have failed to do so on each of those occasions. We will not consider Barbara Glover further for that responsibility and deny the Renewed Motion with regard to her.

Turning to Mr. Glover's affidavit, the Court finds relevant the following statements of his qualifications:

> "Considerable sophistication in securities investments" as the result of his education (M.B.A. from University of Michigan) and some 40 years experience in the financial services industry, principally as a stockbroker and financial adviser. (Glover Aff., ¶¶ 3-5.)
>
> Familiarity with the business developments and financial disclosures of IT Group beginning sometime prior to 1996 through its bankruptcy in 2002; considered IT Group to be one of four stocks he followed closely "through [his] own leg work." (Id., ¶ 6.)
>
> Based his decisions to invest in IT Group on the Company's annual and quarterly SEC reports and press releases, including "the Company's claimed revenues and backlog." States that the willingness of the Carlyle Group "to make a sizeable commitment to the Company gave [him] additional confidence that IT Group had a promising future, because as a multibillion dollar investment fund they had the resources to stand behind IT Group and support its announced expansion program." (Id., ¶ 7.)
>
> Viewed the Company's bankruptcy and demise as "inconsistent with the Company's prior disclosures about the Company's financial condition and prospects;" "felt deceived" and concerned about his personal loss and "the potential effect IT Group's failure could have

> on [his] livelihood." (Id., ¶ 13.)
>
> Located counsel (Miller Shea, P.C., and Glancy Binkow & Goldberg LLP) through personal contacts at some unspecified time. When Miller Shea brought in Lionel Glancy, Mr. Glover "was overjoyed" because he recognized this name from reading financial publications as an attorney who dealt with "significant class action cases." (Id., ¶ 15.)
>
> Has had frequent communication with both Miller Shea and Glancy Binkow & Goldberg; will continue to do so throughout this litigation and is prepared to undertake out of town travel if necessary. (Id., ¶ 16.)
>
> Concludes that "as a result of the financial loss . . . [he is] very determined to recover [his] own loss and the losses of other investors." (Id., ¶ 17.)

Mr. Glover's affidavit also provides information which has little or no bearing on his appointment as Lead Plaintiff, e.g., the fact that he owned some 23,500 additional shares of IT Group which he purchased before and after the Class Period. (Glover Aff., ¶ 8.) Since the Complaint limits the Class to individuals who purchased common stock in IT Group between October 21, 1998, and February 23, 2000, that information is irrelevant, as are any losses he suffered from those purchases inasmuch as he cannot recover such losses in this suit. Likewise, the investments of his brokerage clients, who allegedly lost an estimated $1.5 to $2 million (id., ¶ 12), are irrelevant. Not only is it entirely unclear from the affidavit when their investments were made, none of those investors is being proposed as co-Lead Plaintiff. Also irrelevant to this case are his assertions of an interest in the companion case, Payne v. DeLuca, CA 02-1927, now pending before

this Court (id., ¶ 3) because he is not being proposed as lead plaintiff in that case.

Based on the sworn statements regarding his experience, education, and motivation to pursue this matter diligently on behalf of the putative class, we conclude that Mr. Glover has established that he satisfies the adequacy prong of Rule 23. Although we still question if he has the largest financial interest in the pending law suit, no member of the class[2] has come forward to challenge the presumption that he is otherwise the most "adequate plaintiff" as defined in 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Albert Glover is therefore appointed Lead Plaintiff in this case.

## II. Approval of Lead Plaintiff's Choice of Counsel

In the previous opinion, we declined to address the question of whether the Glovers' proposed legal counsel should be approved, reasoning that if the Glovers were not named Lead

---

[2] Defendants' objections to the appointment of Mr. Glover are noted, however, such opposition may be raised only by a member of the Class from which Defendants are explicitly excluded in Paragraph 50 of the Complaint. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (the presumption that the proposed lead plaintiff will not "fairly and adequately protect the interest of the class; or . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class" may be rebutted only "by a member of the purported plaintiff class.") The other objections raised in Defendants' brief in opposition to the appointment of lead plaintiffs, Docket No. 39 at 12-17, and in their Supplemental Authority in Support of Defendants' Opposition to Glover Plaintiffs' Renewed Motion . . . , Docket No. 40 (and attachment thereto, Lieberman v.Cambridge P'ship L.L.C., Nos. 04-3079 & 04-386, 2005 U.S. App. LEXIS 28752 (3d Cir. Dec. 27, 2005)) are more appropriately raised in a motion to dismiss the complaint.

Plaintiff, other members of the class who aspired to that role might propose alternative counsel or the case could be dismissed for lack of a named plaintiff. We turn now to the question of whether the Lead Plaintiff's choice of counsel should be accepted.

Under the Reform Act, an approved lead plaintiff is permitted to select and retain counsel to represent the class, subject only to approval of the court. 15 U.S.C. § 78u-4(a)(3)(B)(v). "Approval of lead counsel necessarily requires an independent evaluation of, among other considerations, the effectiveness of proposed class counsel to ensure the protection of the class." In re Milestone Scientific Sec. Litig., CA No. 98-3404, 1999 U.S. Dist. LEXIS 6798, *31-*32 (D. N.J. Mar. 25, 1999). A court should not interfere with lead plaintiff's choice of counsel unless such intervention is necessary to "protect the interests of the plaintiff class." Smith v. Suprema Specialties, 206 F. Supp.2d 627, 641 (D. N.J. 2002), quoting H.R. Conf. Rep. No. 104-369, at 35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 734; S. Rep. No. 104-98 at 11-12 (1995) reprinted in 1995 U.S.C.C.A.N. 679, 690). Approval of a lead plaintiff's choice of lead counsel is a matter of discretion for the court. In re Milestone Scientific, 1999 U.S. Dist. LEXIS 6798, at *31.

Here, as noted above, Mr. Glover has retained Glancy Binkow

7

& Goldberg LLP ("Glancy") and Miller Shea P.C. ("Miller") as co-lead counsel, and is proposing Chimicles & Tikellis LLP ("Chimicles") as liaison counsel. (Memorandum of Points and Authorities in Support of Motion of the Glover Plaintiffs for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Co-Lead Counsel, Docket No. 26, at 10.) Mr. Glover asserts that these firms "possess extensive experience in the area of securities litigation and have successfully prosecuted numerous securities fraud class actions." (Id. at 11.) Therefore, he concludes, "the Class will receive the highest caliber of legal representation." (Id.)

The Court has reviewed the firm resumes for Glancy and Miller attached as Exhibits D and E to the Declaration of Lionel Glancy in Support of the Motion of the Glover Plaintiffs for Appointment as Lead Plaintiff . . . (Docket No. 27.) Glancy, a Los Angeles-based firm with offices in New York and San Francisco, specializes in securities fraud, antitrust, and complex commercial litigation. Miller, based in Michigan,[3] has successfully prosecuted securities fraud and other types of class actions since at least 1995. We are satisfied that the

---

[3] The Miller firm resume does not provide its address nor any information about the attorneys who are affiliated with the firm. The assumption that Miller is a Michigan-based firm is derived from the address provided in various pleadings and from the fact that "a partner at a large Detroit defense firm" gave Mr. Glover the names of three "local attorneys," one of which was E. Powell Miller of Miller Shea. (Glover Aff., ¶ 15.)

experience and resources of these firms as reflected their resumes are adequate to effectively represent the Lead Plaintiff and the members of the class in this litigation.  While it is unclear why two firms are needed to serve as co-lead counsel, the Reform Act does not limit the Lead Plaintiff's selection of representation to just one firm, even though appointment of multiple firms may lead to conflicts among attorneys and exacerbate the problems of the Lead Plaintiff in effectively managing the litigation and monitoring the performance of counsel.  See In re Milestone Scientific, 1999 U.S. Dist. LEXIS 6798 at *32-*51, discussing the pros and cons of representation by multiple firms.  However, based on the extensive list of duties for lead counsel outlined in Lead Plaintiff's proposed order of court (attached to Docket No. 25, ¶ 11) and on the allegation that the number of Class members may be "in the thousands" (Complaint, ¶ 51), appointment of two firms may not be excessive in light of the potential complexity of this case.  Glancy Binkow & Goldberg LLP and Miller Shea P.C. are therefore approved as co-Lead Counsel in this matter.[4]

No resume is provided for Chimicles, nor is there any description of that firm's proposed duties as liaison counsel in either the brief in support of the Renewed Motion or in the

---

[4] The Court notes that neither of these firms has entered an appearance.  They are directed to do so within ten days of the date of this Memorandum and Order.

proposed order.  As Judge William H. Walls has noted, qualified lead counsel should surely be capable of performing the ministerial tasks typically assigned to liaison counsel (e.g., advising lead counsel on local procedural matters, coordinating administrative matters, distributing communications between the court and other counsel, convening meetings of counsel, and advising parties of developments in the case.)  *See* In re Cendant Corp. Litig., CA No. 98-1664, 1998 U.S. Dist. LEXIS 13989, *27-28 (D. N.J. Sept. 8, 1998); *see also* In re Nice Sys., Ltd. Secs. Litig., CA No. 99-1693, 1999 U.S. Dist. LEXIS 11533, *56-*58 (D. N.J. June 10, 1999) (Lechner, J.), reaching same conclusion.  In fact, several of the ministerial duties identified by Judge Wall are explicitly assigned to co-Lead Counsel in the proposed order. In the absence of an explanation of why liaison counsel are required or what their duties might be, the Court declines to appoint Chimicles & Tikellis to that role.

    An appropriate Order follows.

                                                   */s/ William L. Standish*
                                                   William L. Standish
                                                   United States District Judge

January  24 , 2006

See distribution list attached

<u>Clair v. DeLuca</u>
CA No. 03-288
Counsel List

Brian D. Long
Chimicles & Tikellis
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899

Nicholas E. Chimicles
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041

Steven A. Schwartz
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041

E. Powell Miller
Miller Shea
1301 West Long Lake Road
Suite 135
Troy, MI 48098

Kwasi Asiedu
Law Offices of Kwasi Asiedu
3858 Carson Street
Number 204
Torrance, CA 90503

Lionel Z. Glancy
Glancy Binkow & Goldberg, LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

Michael Goldberg
Glancy Binkow & Goldberg, LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

Robert Zabb
Glancy Binkow & Goldberg, LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

Jill M. Szafranski
Eckert, Seamans, Cherin & Mellott
600 Grant Street
44th Floor
Pittsburgh, PA 15219

Mark A. Willard
Eckert, Seamans, Cherin & Mellott
600 Grant Street
44th Floor
Pittsburgh, PA 15219

F. Timothy Grieco
Eckert, Seamans, Cherin & Mellott
600 Grant Street
44th Floor
Pittsburgh, PA 15219

Charles A. DeMonaco
Dickie, McCamey & Chilcote. P.C.
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402

Kimberly L. Haddox
Dickie, McCamey & Chilcote, P.C.
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402

Richard J. Federowicz
Dickie, McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402

Larry K. Elliott
Cohen & Grigsby, P.C.
11 Stanwix Street
15th Floor
Pittsburgh, PA 15219

Thomas L. Patten
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004

David A. Becker
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004

Courtney S. Schorr
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004

Joel B. Ard
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004

Laurie B. Smilan
Latham & Watkins, LLP
11955 Freedom Drive
Suite 500
Reston, VA 20190