UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS L. PAYNE, SID ARCHINAL, GARY H. KARESH, JO ANN KARESH, BELCA D. SWANSON AND MERLE K. SWANSON individually and on behalf of all others similarly situated,<br><br>                                        Plaintiffs,<br><br>        v.<br><br>ANTHONY J. DeLUCA, HARRY J. SOOSE, FRANCIS J. HARVEY, JAMES C. MCGILL, RICHARD W. POGUE, DANIEL A. D'ANIELLO, PHILIP B. DOLAN, E. MARTIN GIBSON, ROBERT F. PUGLIESE, JAMES DAVID WATKINS, and THE CARLYLE GROUP,<br><br>                                        Defendants. | **CIVIL ACTION NO. 02-1927**<br><br>**CLASS ACTION**<br><br>**Chief Judge Donetta W. Ambrose** |
| ALBERT L. GLOVER, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>        v.<br><br>ANTHONY J. DeLUCA, HARRY J. SOOSE, FRANCIS J. HARVEY, JAMES C. MCGILL, RICHARD W. POGUE, DANIEL A. D'ANIELLO, PHILIP B. DOLAN, E. MARTIN GIBSON, ROBERT F. PUGLIESE, JAMES DAVID WATKINS, and THE CARLYLE GROUP,<br><br>                                        Defendants. | **CIVIL ACTION NO. 03-0288**<br><br>**CLASS ACTION**<br><br>**Chief Judge Donetta W. Ambrose** |

**LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER GRANTING APPLICATION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, DIRECTING NOTICE OF PENDENCY AND SETTLEMENT OF CLASS ACTIONS AND SETTING HEARING DATE FOR FINAL APPROVAL OF SETTLEMENTS**

Lead Plaintiffs, Albert L. Glover, Thomas L. Payne, Sid Archinal, Gary H. Karesh, Jo Ann Karesh, Belca D. Swanson, and Merle K. Swanson (collectively "Lead Plaintiffs"), respectfully submit this memorandum of law in support of entry of an Order (a) preliminarily certifying the Settlement Class for settlement purposes only with the Lead Plaintiffs serving as class representatives and Lead Counsel serving as Class Counsel; (b) preliminarily approving the settlement between Lead Plaintiffs, and defendants Anthony J. DeLuca, Harry J. Soose, Francis J. Harvey, James C. McGill, Daniel A. D'Aniello, Philip B. Dolan, Robert F. Pugliese, E. Martin Gibson, Richard Pogue, James David Watkins (collectively "Individual Defendants") and The Carlyle Group (collectively "Defendants" or "the ITG Group Defendants"), in accordance with the Stipulation of Settlements dated April 21, 2009 and attached hereto as Exhibits 1 and 2 (the "Stipulations")[1]; (c) approving as to form the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and the Summary Notices of Pendency and Proposed Settlement of Class Action and Settlement Thereon for publication (the "Summary Notice") annexed as exhibits to the Stipulations of Settlement; and (d) scheduling a date for the Settlement Hearing to consider finally, after giving Settlement Class Members adequate time to respond to the Settlements, whether the Settlements are fair, reasonable and adequate to the Class and should be approved by the Court. The Defendants consent to this motion.

---

[1] Lead Plaintiffs entered into two separate settlement agreements with Defendants, one with the Individual Defendants and the other with The Carlyle Group.

1

**INTRODUCTION**

Lead Plaintiffs have reached an agreement to settle the above-captioned securities class action litigations (the "Action") against the Individual Defendants for a payment of Three Million Four Hundred Thousand Dollars ($3,400,000.00) in cash, and as against the Individual Defendants and The Carlyle Group, for a release of the Defendant's Released Claims (the "Settlement"). The proposed Settlements were achieved after seven years of litigation. The proposed Settlements are the product of informed, arms-length negotiations. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs now seek this Court's approval to disseminate the Notice to members of the Class, and to set a date for a hearing to consider the fairness of the Settlements, the plan of allocation for distributing the Settlement proceeds, and the reasonableness of Lead Plaintiffs' Counsel's petition for an award of attorneys' fees and reimbursement of litigation expenses.[2]

As discussed in Section II.A *infra*, preliminary approval is simply the first step in the settlement approval process. Rule 23 of the Federal Rules of Civil Procedure contemplates that in granting preliminary approval, the Court should also "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1); *see also* Notice attached as Exhibit A-1 to the Stipulations. Finally, Rule 23 also provides that

---

[2] "Class" means the Settlement Class, defined in the Stipulations at ¶1.23 and ¶1.20 as: "all Persons (including Lead Plaintiffs and other named Plaintiffs) who purchased ITG common stock during the period October 21, 1998 through January 15, 2002, inclusive. Excluded from the Settlement Class are all Defendants in the Action; the members of Defendants' immediate families; all individuals who served as officers and directors of ITG or its subsidiaries at any time during the Settlement Class Period; any person, firm, trust, corporation, or entity in which any Defendant in the Action has a controlling interest or any entity which is related to or affiliated with any Defendant in the Action; and the legal representatives, agents, affiliates, heirs, successors and assigns of any such excluded persons. Also excluded from the Settlement Class are those persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice."

2

the Court should schedule a final settlement hearing (the "Settlement Hearing"), at which time class members will have the opportunity to object to any aspect of the settlements. Fed. R. Civ. P. 23(e)(2) & (e)(5).

The preliminary approval sought by this motion merely requires the Court to make an initial fairness evaluation to ensure that the Settlements are "within the range of possible approval." *Manual for Complex Litigation*, Third, §30.41 (1995). *See also Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."); *Curiale v. Lenox Group, Inc.*, 2008 WL 4899474, at *4 (E.D. Pa. Nov 14, 2008) (same). The Court is *not* required at this point to make a final determination as to the fairness of the Settlements. Lead Plaintiffs believe that the proposed Settlements not only fall well within "the range of possible approval," but easily satisfy the criteria for final approval. Accordingly, preliminary approval should be granted.

Lead Plaintiffs respectfully request that this Court enter the Notice Order, which will:

(i) preliminarily certify the Settlement Class as set forth herein;

(ii) preliminarily approve the Settlements on the terms set forth in the Stipulations, attached hereto as Exhibits 1 and 2;

(iii) approve the form, substance and requirements of (a) the Notice; (b) the Summary Notices of Pendency and Proposed Settlement of Class Action and Settlement Thereon (the "Publication Notice"; together with the Notice, the "Notices"), and (c) the Proof of Claim and Release form (the "Proof of Claim");

(iv) find that the procedures established for publication, mailing and distribution of the Notices substantially in the manner and form set forth in the Notice Orders constitute the best notice practicable under the circumstances and are in full compliance with the notice requirements of due process, Fed.

3

      R. Civ. P. 23 and Section 21D(a)(7) of the Securities
      Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended
      by the Private Securities Litigation Reform Act; and

  (v)  set forth a schedule and procedures for dissemination or
      publication of the Notices, for requesting exclusion from the
      Class, for submitting papers in support of final approval of
      the Settlements, for objecting to the Settlements, and for the
      Settlement Hearing.

**I.**  **DESCRIPTION OF THE LITIGATION**

  This litigation comprises two federal securities law class actions regarding IT Group ("ITG," "ITG Group," or "the Company"), formerly a New York Stock Exchange listed company (collectively the "Action"). The first action, *Payne v. DeLuca et al.* ("*Payne*"), D. Nev. Case No. 02-0764, was filed on May 31, 2002, on behalf of purchasers of ITG securities during the class period from February 24, 2000 to January 15, 2002, spanning the time from ITG's press release reporting full year 1999 financial results until ITG's bankruptcy. On October 4, 2002, Thomas Payne, Sid Archinal, Gary Karesh, Jo Ann Karesh, Belca Swanson and Merle Swanson were appointed Lead Plaintiffs. On November 7, 2002, *Payne* was transferred to the Western District of Pennsylvania, and assigned case number 02-1927. On February 28, 2003, Plaintiffs filed an amended complaint in *Payne* and concurrently initiated the case of *Clair v. DeLuca et al.*, W.D. Pa., Case No. 03-0288, to cover a class period from October 21, 1998 through February 23, 2000. Both complaints allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

  On December 16, 2004, Defendants' motion to dismiss the *Payne* First Amended Complaint was sustained with leave to amend. On March 3, 2005, Plaintiffs filed a second amended complaint in *Payne*. On May 2, 2006, the Court granted the *Payne* motion to dismiss with prejudice, published at 433 F.Supp.2d 547 (hereinafter the "*Payne*" decision). On May 15,

2006, Plaintiffs filed a motion for reconsideration and a motion to alter judgment to allow leave to amend, both pursuant to Fed. R. Civ. P. 59. On December 11, 2006, the Court denied both Rule 59 motions. *See* 2006 WL 3590014. On January 5, 2007, Plaintiffs moved for reconsideration pursuant to Fed. R. Civ. P. 60 for relief from the May 2, 2006 dismissal order, based on newly-discovered evidence. On April 2, 2007, that motion was denied.

On January 26, 2006, the *Clair* action was re-captioned to reflect the appointment of Albert Glover as the Lead Plaintiff (hereinafter, "*Glover*"). On March 31, 2006, a first amended complaint was filed in *Glover*. On September 29, 2006, the Court granted the motion to dismiss in *Glover* with prejudice, which appears at 2006 WL 2850448 (W.D.Pa. Sept. 29, 2006) (the "*Glover*" decision).

On May 15, 2008, Plaintiffs appealed the May 2, 2006 *Payne* decision and the September 29, 2006 *Glover* decision to the Third Circuit Court of Appeals ("the Appeal").[3] The Appeals were consolidated and fully briefed and oral argument before the Third Circuit was scheduled for February 3, 2009. On February 1, 2009, after conducting arms-length negotiations, the Parties agreed to a settlement in principle in this Action for the sum of $3,400,000 as to a class of persons or entities who purchased the common stock of ITG during the period October 21, 1998 through January 15, 2002, inclusive. Additionally, all of the defendants, including the Carlyle Group, will provide to Lead Plaintiffs a release of the Defendants' Released Claims.

.

---

[3] On May 9, 2008, Lead Plaintiffs submitted to the Court of Appeals a Stipulation of Dismissal with prejudice of Individual Defendants Robert F. Pugliese, E. Martin Gibson, Richard Pogue, and James David Watkins.

Lead Plaintiffs and their counsel believe that they have conducted a thorough investigation of the claims asserted in the Litigation.  This investigation included, *inter alia*: (1) consultation with an expert concerning the amount of damages suffered by the Settlement Class; (2) detailed reviews of ITG's public filings, annual reports, press releases, and other public statements; (3) review of analyst reports and articles in the financial press relating to ITG; (4) interviewing former employees and non-parties with knowledge of the claims asserted in the Action; and (5) research of the applicable law with respect to the claims asserted in the complaints filed in the Litigation, and the potential defenses thereto.

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiffs in the Action.

## II.     THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL

### A.     The Standards For Preliminary Approval

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re PNC Fin. Services Group*, 440 F. Supp. 2d 421, 429 (W.D. Pa. 2006) ("[S]ettling class action litigation is to be encouraged by the courts, particularly in complex settings that will consume substantial judicial resources and have the potential to linger for years.").  As courts considering preliminarily approving class action settlements have stated:

> In considering whether to grant preliminary approval to a class action settlement agreement, courts make a preliminary evaluation of the fairness of the settlement, prior to a hearing on notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted.

6

*In re Nasdaq Market-Makers Antitrust Litig.*, No. 94-3996, 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997) (citing *Manual for Complex Litigation*, Third, §30.41 (1995)); *see also Jones*, *supra*, 2007 WL 2085357, at *2 ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."). Thus, the preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

Approval of a class action settlement generally entails a two-step process. *Jones*, *supra*, 2007 WL 2085357, at *2. The Court first makes a preliminary determination of whether the settlement appears to fall within the range of possible approval. *See Manual for Complex Litigation*, Third, § 30.41 (1995). If the settlement meets the minimal requirements for preliminary approval, the Court should "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed R. Civ. P. 23(e)(1). After the Class is notified of the proposed settlement, the second and final step in the approval process requires the Court to hold a formal fairness hearing, where class members have the opportunity to object to any aspect of the settlement. Fed. R. Civ. P. 23(e)(2) & (e)(5).

The standard for granting preliminary approval is not a difficult one. As the Manual for Complex Litigation explains, if the proposed settlement "*appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.*" *Manual for Complex Litigation*, Third, §30.41

7

(1995) (emphasis added); *see also In re IPO Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) ("[w]here the proposed settlement appears to be the product of serious, informed, noncollusive negotiations and falls within the range of possible approval, preliminary approval is granted.").

### B. The Proposed Settlements Should Be Preliminarily Approved

The proposed Settlements here plainly satisfy the standards for preliminary approval. They provide the sum of $3,400,000 in cash for distribution to eligible Class Members, provide Lead Plaintiffs a release of the Defendants' Released Claims, and therefore, are clearly beneficial to the Class. Given the complexities of this Action, and the continued risk if Lead Plaintiffs' appeals were successful and the parties were to proceed to trial, the Settlement represents a reasonable resolution, and eliminates the risk that the Class might not otherwise recover from Defendants.[4] *See, e.g., In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F. Supp. 450, 539-40 (D.N.J. 1997) ("Because establishing liability at trial and prevailing on appeal is not, and never can be, guaranteed, and because the Proposed Settlement is certain and avoids many of the obstacles potentially implicated by a trial, on balance the risks of establishing liability weigh in favor of approving the settlement."); *see also In re Metropolitan Life Ins. Co. Sales Practices Litig.*, No. 96-179, MDL 1091, 1999 WL 33957871, at *26 (W.D. Pa. Dec. 28, 1999) ("The proposed settlement, by comparison, will provide Class Members with automatic and immediate relief for those not electing Claim Evaluation, as well as a simple and expedient Claim

---

[4] Indeed, even if Lead Plaintiffs prevailed on appeal and subsequently at trial, risk to the Class remains. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury returned a verdict for plaintiffs after trial. However, the court entered judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant. In another case, the class won a jury verdict and a motion for judgment notwithstanding the verdict was denied, but, on appeal, the judgment was reversed and the case dismissed. *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990); *see also Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing plaintiff's jury verdict of $81 million for securities fraud).

8

Evaluation process designed to compensate claimants for their alleged harm, all without the expense and substantial delay of further litigation."). If not for the proposed Settlements, the Defendants would continue to fiercely contest this Action, and taking into account the probability of further litigation if Lead Plaintiffs prevail on appeal, the Action would likely continue for years. The proposed Settlements ensure the Class a substantial benefit, while eliminating further expenses, uncertainty, and delay.

Moreover, the factors described above that courts consider in connection with preliminary approval of class action settlements lend support to the proposition that the Settlements are well within the range of possible approval. First, the terms of the proposed Settlements are the product of arm's length negotiations. Lead Plaintiffs' Counsel prosecuted this Action over a period of over seven years; the Settlements were achieved only after Lead Plaintiffs' appeals were fully briefed and oral argument before the Third Circuit was scheduled. Accordingly, there is no evidence here of any collusion between the parties, nor is there any evidence that Lead Plaintiffs will receive preferential treatment. To the contrary, Lead Plaintiffs will be treated exactly the same as any other Class Member.

Furthermore, Lead Plaintiffs' Counsel has significant experience in securities and other complex class action litigation, and has negotiated many other substantial class action settlements throughout the country. Here, Lead Plaintiffs' Counsel has performed a comprehensive investigation and litigated this Action extensively, and, therefore, apprehends "the relative merits of the[] factual and legal contentions," as well as the "considerable risks associated with further litigation, particularly in terms of establishing and recovering damages." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003). Given the uncertainty and further substantial expense of pursuing this action through the pending appeal and, if successful

9

on appeal, through trial and possible further appeals, the proposed Settlements are fair, reasonable and adequate, and in the best interests of the Class.

At the Settlement Hearing, the Court will have before it a more extensive record (including additional motion papers and affidavits) and will be in a position to make an ultimate determination as to whether the Settlements are fair, reasonable and adequate under all of the circumstances surrounding the litigation. At this juncture, however, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlements so that notice of the Settlements may be sent to the Class and a Settlement Hearing scheduled.[5] The Court is only being asked to permit notice of the terms of the Settlements to be sent to the Class, and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members, the fairness of the Settlements, the plan of allocation, and Lead Plaintiffs' Counsel's request for an award of fees and expenses. 5 *Moore's Federal Practice* 23.85[3], at 23-353 to 23-354 (3d ed. 1999).

As outlined in the proposed Orders preliminarily approving the settlements (attached as Exhibit A to each of the Stipulations), Lead Plaintiffs will notify Settlement Class Members of the Settlements by mailing the Notice and Proof of Claim Forms to Settlement Class Members no later than seventeen (17) days after entry of the Notice Orders. The Notice will advise Settlement Class Members of the essential terms of the Settlements, of information regarding Lead Plaintiffs' Counsel's fee application, and of the proposed plan for allocating the Settlement proceeds among Class Members. It also will set forth the procedure for objecting to the

---

[5] The notice and notice procedures set forth in the Notice Order plainly satisfy Rule 23's notice requirements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. at 216, 231 (D.N.J. 1977) (a settlement notice "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.").

10

Settlements, Plan of Allocation or the request for an award of attorneys' fees and reimbursement of litigation expenses, or opting out of the Class, and also will provide specifics on the date, time and place of the Settlement Hearing. The proposed Notice Orders further requires Lead Plaintiffs to cause the Summary Notices to be published once in *Investors Business Daily* within twenty-one (21) days of entry of the preliminary approval Orders. Lead Plaintiffs' Counsel believes that, because the Notice and Summary Notices fairly apprise Class Members of their rights with respect to the Settlements, they represent the best notice practicable under the circumstances and should be approved by the Court.

### C. A Conditional Settlement Class Should Be Certified

The remaining issue is preliminary approval of a conditional settlement class. "In considering whether to conditionally certify the class, the Court must consider whether the proposed class meets the four requirements of Rule 23(a) and one of the three requirements of Rule 23(b)(3)." *Kaplan v. Chertoff*, No. 06-5304, 2008 WL 200108, at *3 (E.D. Pa. Jan. 24, 2008). At this juncture, the Court's inquiry is only preliminary, for the purposes of providing notice. "Only when the settlement is about to be *finally* approved does the court formally certify the class, thus binding the interests." *Kaplan*, 2008 WL 200108, at *4 (emphasis added). Here, the Settlement satisfies the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation, and the Rule 23(b)(3) requirements of predominance and superiority. Fed. R. Civ. P. 23(a) & (b)(3).

Numerosity is satisfied when the class is "so numerous that joinder of all class members is impracticable." Rule 23(a)(1). Numerosity is readily satisfied in a securities class action such as those here, where there were likely "[h]undreds, if not thousands, of investors [who] traded in

[ITG] stock during [the class period]." *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 425 (E.D. Pa. 2006).

Commonality requires a showing that "there are questions of law or fact common to the class." Rule 23(a)(2). "[T]he commonality prerequisite is satisfied as long as the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Vicuron*, 233 F.R.D. at 426. Here, the commonality requirement is easily satisfied, as the Lead Plaintiffs and the Class allegedly "suffered damages from the same course of fraudulent conduct … [and] the members of the proposed class must demonstrate that the press releases and other actions taken by [Defendants] artificially inflated the trading price of the company's stock." *Id.*

The typicality inquiry "centers on whether the interests of the named plaintiffs align with the interests of the absent class members." *Id.* Here, Lead Plaintiffs' claims are substantially similar, if not identical, to those of the absent class members, as they all suffered from the same alleged fraudulent course of conduct. There are no unique defenses to the Lead Plaintiffs that would make their claims atypical. As such, the typicality requirement is satisfied here. *See id.*

"Adequacy of representation is a two-part inquiry that … asks whether plaintiff's attorney is qualified, experienced, and able to conduct the litigation … [and] serves to uncover conflicts of interests between the named parties and the class they seek to represent." *Jones*, *supra*, 2007 WL 2085357, at *4. As stated above, Lead Plaintiffs' counsel is experienced in securities class actions and other complex litigation. *See also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999). Furthermore, as indicated above, Lead Plaintiffs' interests are aligned with those of the class members in establishing Defendants' violation of the securities laws. Thus, Lead Plaintiffs are adequate representatives as there are no conflicts of interest between Lead Plaintiffs and the class.

The predominance requirement of Rule 23(b)(3) "overlaps considerably with the commonality requirement … and demands that the common issues of the class prevail over any issues affecting one or a small number of the class members." *Vicuron*, 233 F.R.D. at 428. The "predominance requirement is easily satisfied" in most securities class actions such as this one, as most of the critical factual and legal questions are common to the class. *Id.* ("Indeed, common to all class members are the crucial allegations that Vicuron made material misrepresentations … and that those statements artificially inflated the value of the corporation's stock."). The question of each class member's damages will not destroy predominance. On the contrary, "[t]he determination of damages owed to each class member will involve a comparatively simple mathematical calculation once the class-wide questions regarding liability are resolved." *Id.*

The final requirement for conditional certification of the settlement class is the superiority requirement. "[T]he class action device must be superior to all other available means of handling the litigation." *Jones*, 2007 WL 2085357, at *4. As stated by the court in *Vicuron*:

> Like many securities fraud class actions, the individual class members in this litigation probably have little interest in pursuing their own claims because of what for many, if not most, is a relatively small loss. Aside from the question of damages as well as a few minor variances, each individual class member's claim is identical to that presented by the putative class. Simultaneous or seriatim litigation arising out of Vicuron's conduct during the class period regarding anidulafungin would be needlessly duplicative and an inefficient use of judicial resources.

233 F.R.D. at 428-29 (holding that "the class action device is superior to available alternative avenues of adjudication for resolving this dispute"). This Action is on all fours with *Vicuron*. Separate, individual actions involving substantially similar claims against ITG would be a waste of judicial resources. And as many class members' claims may be modest, the class action

device is the superior method of adjudication. *See also Jones*, 2007 WL 2085357, at *4 ("Class treatment is superior where individual claims are small or modest.").

In sum, the proposed Settlements meets the criteria of Rule 23(a) and (b)(3), and this Court should preliminarily certify the Settlement Class.

### III.  SCHEDULE OF EVENTS

All of the following dates run from either the date of the entry of the Notice Orders or the date of the Settlement Hearing: dates for mailing and publication of the Notice and Summary Notices, and deadlines for requesting exclusion from the Class, objecting to the Settlement and submitting claims. The preliminary approval Orders establish the following schedule:

| | |
|---|---|
| Notice Mailed to Settlement Class | 17 days after entry of the Notice Order |
| Publication Notice published | 21 days after entry of the Notice Order |
| Lead Plaintiffs file their papers in support of final approval of the Settlements | 7 days before the Settlement Hearing |
| Last day for Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlements | 21 days before the Settlement Hearing |
| Settlement Hearing | A date to be set by this Court |
| Settlement Class Members' deadline to file claims and participate in the Settlement Fund | 150 days after entry of the Notice Order |

### CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully submit that the Settlement Class should be preliminarily certified and the proposed Settlements should be preliminarily approved by the Court allowing notification to be sent to Class Members of the terms of the Settlements and the date of the Settlement Hearing.

Dated: April 21, 2009                              GLANCY BINKOW & GOLDBERG LLP

                                                   By:  ___/s/ Lionel Z. Glancy_____
                                                        Lionel Z. Glancy

Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California  90067
Telephone:     (310) 201-9150
Facsimile:     (310) 201-9160

Lead Counsel for Plaintiffs


E. Powell Miller
THE MILLER LAW FIRM, P.C.
Miller Building
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone:     (248) 841-2200
Facsimile:     (248) 652-2852

Co-Lead Counsel for *Glover* Plaintiffs


Steven A. Schwartz
Pa. I.D. No. 50579
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone:     (610) 642-8500
Facsimile:     (610) 649-3633

Liaison Counsel for Plaintiffs